UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHELIA FINCH,<br>    *Plaintiff,*<br>    *v.*<br>TOOHER, WOCL & LYDON, LLC, AND TOOHER<br>& WOCL, LLC,<br>    *Defendants.* | Civil No. 3:10CV713 (JBA)<br><br>January 15, 2013 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shelia Finch has sued the law firms she retained to seek compensation for her son's death in a Stamford Police Department holding cell because they never filed a notice of intent to sue under Connecticut General Statutes § 7-465. Defendant Tooher, Wocl & Leydon, LCC and Defendant Tooher & Wocl, LLC (collectively "Defendants") now move [Doc. #45] for summary judgment as to her claims of legal malpractice and breach of contract, arguing that Plaintiff cannot prove that Defendants' actions caused any injury because she brought her wrongful death claims against the City of Stamford in a federal civil action. Defendants further maintain that she cannot prove the elements of her legal malpractice claim without expert testimony as to the standard of care and medical causation. For the following reasons, Defendants' motion for summary judgment is granted.

I.    **Background**

Early on the morning of May 23, 2008, Plaintiff's son, James Avalone, Jr., was taken into custody by the Stamford Police Department and was charged with possession of narcotics within 1,500 feet of a school, interfering with police, breach of peace, and trespass. (*See* Exs. 12Q and 12R to Defs.' Loc. R. 56(a)1 Stmt [Doc. # 46].) When the police first approached Mr. Avalone, he swallowed several of the narcotics pills he was

carrying at the time in order to avoid detection. (*See* Ex. E to Pl.'s Loc. R. 56(a)2 Stmt [Doc. # 52-1].) At the time of his arrest, the officers noted that he appeared to be "extremely intoxicated." (*See* Ex. G to *id.*) Mr. Avalone was processed and held in the custody of the Stamford Police Department until he could be presented in court on the pending charges. When his breakfast was brought to his cell around 8:00 am that morning, the officers observed him snoring loudly. (*See* Ex. 12D to Defs.' 56(a)1 Stmt.) However, when the officers attempted to wake Mr. Avalone about an hour later to go to court, he was non-responsive. (*See* Ex. 12F to *id.*) The officers observed that Mr. Avalone's body was already cold to the touch and lividty had set in. (*See* Ex. 12F to *id.*) The officers immediately called for emergency medical personnel, who pronounced Mr. Avalone dead at the scene. (*See* Ex. 12F to *id.*) The Office of the Chief Medical Examiner later concluded that Mr. Avalone's death was caused by multiple drug toxicity. (*See* Ex. 12B to *id.*)

On May 28, 2007, Plaintiff signed a written retainer agreement with Defendant Tooher & Wocl, LLC.[1] (*See* Ex. 2 to *id.*) According to the agreement, Defendants agreed "to investigate and, if warranted, represent the client in a civil claim against the City of Stamford and the Stamford Police Department." (Ex. 2 to *id.*) In addition to Plaintiff's claims that Defendants failed to maintain adequate communication with her and failed to perform and adequate investigation into the circumstances of her son's arrest and death, (*see* Pl.'s 56(a)2 Stmt ¶¶ 21–22)[2], Plaintiff asserts that Defendants' undisputed failure to

---

[1] Defendant Tooher, Wocl & Leydon, LLC is the successor to Defendant Tooher & Wocl, LLC, which ceased operations as of December 18, 2008. (*See* Defs.' 56(a)1 Stmt ¶ 3.)

[2] Plaintiff called on at least two occasions in January and June of 2009 and expressed her concern that she had not been contacted regarding the case. (*See* Ex. J to Defs.' 56(a)1 Stmt.) Defendants' internal records indicate that after Plaintiff called again

2

file a notice of intent to sue with the City of Stamford as required by Conn. Gen. Stat. § 7-465 violated accepted standards of professional care and violated the terms of the retainer agreement.

On May 14, 2010, through her current counsel, Plaintiff filed a timely civil action against the City of Stamford for the wrongful death of her son.  (*See* Ex. 13 to *id.* (Docket Summary for *Finch v. Stamford*, 3:10-cv-00748 (MRK)).)   In that action, Plaintiff asserted wrongful death claims under 42 U.S.C. § 1983 and Conn. Gen. Stat. § 52-557n, and a loss of consortium claim.  (*See* Ex. 6 to *id.*)   On November 2, 2011, Judge Kravitz granted summary judgment in favor of the City of Stamford on Plaintiff's federal claims and declined to exercise supplemental jurisdiction over her state–law claims.  (*See* Ex. 7 to *id.* (Mem. of Decision in *Finch v. Stamford*).)   Plaintiff has elected not to pursue these state claims against the City of Stamford in state court.  (*See.* Ex. 4.)³

---

in June 2009 demanding an update on the case, Defendants sent her a copy of her son's autopsy report, but that they still did not have a copy of the related police reports.  (*See id.*)  On July 1, 2009, after Plaintiff' second call requesting a status update on the pending case, Defendants informed Plaintiff that they did not intend to pursue her wrongful death claim and offered to provide a referral to another law firm.  (*See id.*)

³ At oral argument, counsel for Plaintiff stated that Plaintiff's claim under § 52-557n was not brought in state court because it was non–meritorious and would be dismissed by the state court, raising the puzzling question of why Plaintiff's counsel chose to bring them in the original federal complaint. (*See* Ex. 6 to Def.'s  Loc. R. 56(a)1 Stmt ¶ 21.)

II.     Discussion[4]

Defendants move for summary judgment on both of Plaintiff's claims. They argue that Plaintiff cannot establish she suffered any injury as a result of Defendants' actions, because she was able to pursue her underlying wrongful death claims against the City of Stamford in a separate action, and because she has failed to present any legal or medical expert testimony regarding her malpractice claim or her underlying wrongful death claim.

**A. Legal Malpractice Claim**

To prevail on a claim for legal malpractice under Connecticut law, Plaintiff must show: "(1) the existence of an attorney–client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." *Grimm v. Fox*, 303 Conn. 322, 329 (2012) (quoting *Mayer v. Biafore, Florek & O'Neil*, 245 Conn. 88, 92 (1998)). Defendants argue that Plaintiff cannot establish the third and fourth elements of her malpractice claim because regardless of Defendants' failure to file a notice of intent to sue, Plaintiff was still able to pursue her underlying wrongful death claims against the City of Stamford, and thus she has suffered no damages.

---

[4] "Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

The gravamen of Plaintiff's legal malpractice claim is that because Defendants failed to file a notice of intent to sue the City of Stamford within six months of her son's death, as required by Conn. Gen. Stat. § 7-465,[5] which provides for indemnification by municipalities for certain tortious conduct of their employees, her suit against the City of Stamford was barred. In other words, the Defendants' failure to follow the procedural requirements of §7-465 caused her to lose the ability to pursue the action for which she retained Defendants to represent her and recover damages for the wrongful death of her son. In their summary judgment motion, Defendants argue that Plaintiff could pursue her claims via Conn. Gen. Stat. § 52-557n,[6] which authorizes negligence suits directly

---

[5] Conn. Gen. Stat. § 7-465(a) states in pertinent part:
Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded . . . for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty . . . . Governmental immunity shall not be a defense in any action brought under this section.

[6] Conn. Gen. Stat. § 52-557n states in pertinent part:
(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud,

against a municipality without any pre–suit notice requirement, and thus sustained no damage as a result of Defendants' inattention or inaction.  In *Spears v. Garcia*, 263 Conn. 22, 33 (2003), the Connecticut Supreme Court recognized that a plaintiff may bring suit directly against a municipality for the negligence of its employees, pursuant to § 52-557n, in lieu of suing the negligent employee at common law and then seeking indemnification from the municipality, pursuant to § 7-465.[7]  *See id.* at 34 ("[W]e conclude that the statutes can coexist and that a party may choose to rely on either statute.").

Plaintiff interprets the language of § 52-557n as excluding municipalities' liability for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law," Conn. Gen. Stat. § 52-557n(a)(2)(B), and because "the operation of a police department is a discretionary function," *Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 167–68 (1988), argues that she is barred from bringing her wrongful death claims arising out of the Stamford Police Department's negligence pursuant to § 52-557n.  She perceives Conn. Gen. Stat. § 7-465 as her exclusive remedy for her claims against the City of Stamford.  Plaintiff's position is not viable after *Grady v. Town of Somers*, 294 Conn. 324 (2009), decided after the notice of intent to sue was required to be filed,[8] in which the

---

       actual malice or wilful misconduct; or (B) negligent acts or omissions
       which require the exercise of judgment or discretion as an official function
       of the authority expressly or impliedly granted by law.

[7] Connecticut courts have explained the nature of these two actions as follows: "Section 52-557n allows an action to be brought directly against a municipality for the negligent actions of its agents. Section 7-465 allows an action for indemnification against a municipality in conjunction with a common-law action against a municipal employee." *Gaudino v. East Hartford*, 87 Conn. App. 353, 356 (2005).

[8] Although the Connecticut Supreme Court had not at that time definitively held that the identifiable person imminent harm exception to discretionary act immunity applied under § 52-557n, Defendant's expert states that even before *Grady*, it was more

Connecticut Supreme Court found that § 52-557n permits negligence suits against municipalities for the discretionary acts of their employees in some circumstances.

In *Grady*, the Connecticut Supreme Court examined the legislative history of § 52-557n to conclude that "the legislature did not contemplate § 52-557n as a bar against all civil actions arising from employees' discretionary acts, despite the discretionary act immunity afforded by § 57-557n(a)(2)(B)." *Id.* at 345. Specifically, *Grady* held that the identifiable person, imminent harm common–law exception to municipal employees' qualified immunity applied to actions brought directly against the municipality under § 52-557n:

> This conclusion is consistent with the legislature's intent, when it enacted § 52-557n, to create a harmonious body of law governing municipal liability. Moreover, to conclude that a plaintiff must always name a municipal employee as a defendant and then plead a separate indemnification claim under § 7-465(a), would be inconsistent with our long–standing body of case law that repeatedly has eschewed applying the law in such a hypertechnical manner so as to elevate form over substance.

*Id.* at 348 (internal quotation marks omitted). Based on the holding in *Grady*, explicitly announcing that § 7-465 and § 52-557n are coextensive, it is clear that Plaintiff could

---

common for Connecticut attorneys to pursue negligence claims directly against a municipality, via § 52-557n, rather than following the two–step process established by § 7-465. (*See* Expert Report, Ex. 10 to Def.'s 56(a)1 Stmt ("I have been defending municipal liability claims for 23 years, and have observed that in the past 5 years, many more negligence claims against a municipality are filed pursuant to 52-557n than by using the two count paradigm of count one sounding in common law negligence and count two brought under Conn. Gen. Stat. 7-465. . . . Under no circumstances would it be a departure from the standard of care in 2008 if an attorney did not file a Notice of Intent to Sue pursuant to Conn. Gen. Stat. 7-465.").) At oral argument, Plaintiff's counsel questioned whether this is "expert" testimony, rather than simply Attorney Thomas Gerarde's interpretation of recent case law. However, because the report includes Attorney Gerarde's opinion as to the applicable standard of care based on legal practice in the relevant community, it is a competent expert opinion to be considered in deciding the pending motion.

bring a common–law negligence suit against the arresting officers, or sue the City of Stamford directly, but in either instance, she would have to prove the identifiable person imminent harm exception to defeat their qualified immunity defense.[9]

In fact, Plaintiff has already pursued a wrongful death suit against the City of Stamford for the death of her son pursuant to § 52-557n. Even though she sought damages for ministerial negligence in *Finch v. Stamford*, 3:10-cv-00748 (MRK), after Judge Kravitz dismissed Plaintiff's federal claims and declined to exercise jurisdiction over her state claims, he did not limit her claims as such, and even indicated in his ruling that the identifiable person, imminent harm exception to discretionary negligence claims might hae applied in the case. [10] *See* Ex. 7 to Defs.' Mem. at 10.) Therefore, Plaintiff cannot establish the third or fourth elements of her legal malpractice claim.

1. *Expert Testimony To Show Legal Malpractice*

Defendants also argue that Plaintiff cannot establish her legal malpractice claim because she has failed to put forward expert evidence to show that Defendants breached their professional duty towards her. "As a general rule, for the plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the

---

[9] Plaintiff also maintains that even assuming she could have brought her claim pursuant to § 52-557n, under *Pitchell v. Williams*, 55 Conn. App. 571 (1999), her loss of the opportunity to sue under § 7-465 is actionable regardless of other possible remedies. This view misreads *Pitchell*. In that case, the plaintiff's attorney failed to bring a claim pursuant to § 7-465 along with plaintiff's § 1983 suit in federal court. The *Pitchell* court held that because the Second Circuit's opinion affirming the dismissal of the plaintiff's § 1983 claim was not dispositive as to a possible state–law civil rights claim, summary judgment as to his malpractice claim for failure to pursue this cause of action was improper. *See id*. at 731–32. *Pitchell* did not hold that a plaintiff could maintain a claim for legal malpractice where an attorney had failed to pursue state law claims under §7-465, but a cause of action under § 52-557n was still available for the plaintiff to pursue.

[10] Plaintiff's claim against the City of Stamford pursuant to § 52-557n could have be re–filed in Connecticut Superior Court within one year of Judge Kravtiz's ruling. *See* Conn. Gen. Stat. § 52-592(a).

8

standard of proper professional skill or care." *Grimm*, 303 Conn. at 329 (quoting *Davis v. Margolis*, 215 Conn. 408 (1990)); *see also Solomon v. Levett*, 30 Conn. App. 125, 128 (1993) ("In a legal malpractice action, the plaintiff must produce expert testimony (1) that a breach of the professional standard of care has occurred, and (2) that the breach was the proximate cause of the injuries suffered by the plaintiff." (internal citations omitted).) "The determination of whether expert testimony is needed to support a claim of legal malpractice presents a question of law." *Id.* (quoting *Moore v. Crone*, 114 Conn. App. 443, 446 (2009)). It is undisputed that Plaintiff has offered no expert testimony to counter the defense expert's opinion that failure to file a notice of intent to suit under these circumstances does not represent a breach of professional duty. (*See* Expert Report, Ex. 10 to Defs.' 56(a)1 Stmt.)

Plaintiff claims Connecticut recognizes an exception to this expert testimony requirement where "there is such an obvious and gross want of care and skill that neglect is clear even to a lay person." *Id.* (quoting *Paul v. Gordon*, 58 Conn. App 724, 724–27(2000)). This exception "is limited to situations in which the defendant attorney essentially has done nothing whatsoever to represent his or her client's interests. *Id.* (quoting *Pagan v. Gonzalez*, 113 Conn. App. 135, 141 (2009)). Plaintiff alleges that Defendants' conduct falls within this exception because they "conducted no investigation whatsoever," "forgot the plaintiff was their client,"[11] and "missed the crucial statute of limitations." (*See* Pl.'s Opp'n [Doc. # 52] at 12–13.)

---

[11] *See* Ex. J to Pl.'s 56(a)2 Stmt ("Shelia Rupp (known [sic] known as Shelia Lynch [sic] left a message on our voice mailbox. The notes in nedles [sic] indicate you talked to her some time ago. Did we take this case? This is her son that died in prison or police custody. She is looking for a status.")

9

Defendants do not dispute that they declined to pursue the wrongful death action on behalf of Plaintiff and that they failed to file a notice of intent to sue within the six–month statute of limitations. The record of the extent of Defendants' investigation is disputed and Defendants claim they did conduct some investigation of Plaintiff's claim. They acquired the report of Mr. Avalone's autopsy, and their internal records indicate that they knew the nature of the charges against Mr. Avalone, and his general time of death. (*See* Ex. J. to Pl.'s 56(a)2 Stmt.) Furthermore, Plaintiff admits that they had contacted her several times to update her on the status of the case. (*See* Ex. 8 to Defs.' 56(a)1 Stmt at 46.) This factual dispute is not material, however, because the *Paul v. Gordon* exception does not apply to this case since it is by no means obvious on its face that Defendants' failure to file the notice of intent to sue breached the applicable standard of care given the overlapping statutory schemes of §§ 7-465 and 52-557n, much less would it be obvious to a lay jury. Therefore, without expert testimony as to the applicable professional duty, Plaintiff's legal malpractice claims must fail.

2.  *Expert Causation Testimony To Show Wrongful Death*

"In legal malpractice actions, the plaintiff must prove that the defendant attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the defendant not been negligent." *Margolin v. Kleban & Samor, P.C.*, 275 Conn. 765, 775 n.9 (2005); *see also Hartford Cas. Ins. Co. v. Farrish–LeDuc*, 275 Conn. 748, 759 (2005) ("When the underlying action was never tried, the client essentially has a double burden of proof. First, the client must show that the attorney was negligent. Second, the client must establish that the underlying claim was recoverable and collectible." (internal quotation marks omitted)). Thus, to prevail here, Plaintiff must also establish that the death

resulted from the officers' negligence in failing to seek immediate medical attention for Mr. Avalone and not medical inevitability. Defendants argue that Plaintiff cannot sustain this burden without expert medical testimony that timely medical intervention could have saved his life. Plaintiff counters that the Medical Examiner's report and conclusions are sufficient to show that his obvious substance intoxication caused his death. Plaintiff's argument fails to appreciate the distinction between cause of death and proximate causation. While Plaintiff's evidence permits lay jurors to form a reasonable belief about cause of death, the autopsy report does not present any evidence for jurors to determine whether and when medical intervention could likely have prevented Mr. Avalone's death from multiple substance toxicity. In other words, while the autopsy records establish Mr. Avalone's cause of death, they do not suffice for a jury to conclude that the officers' failure to seek medical attention was the proximate cause of his death. Without such expert testimony, Plaintiff cannot establish that a wrongful death suit against the City of Stamford would have succeeded, and she thus cannot prove that she suffered a legally cognizable injury as a result of Defendant's alleged malpractice. Therefore, Defendants are entitled to summary judgment on Plaintiff's legal malpractice claim.

B. **Breach of Contract Claim**

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the other party and damages." *Keller v. Beckenstein*, 117 Conn. App. 550, 558 (2009). Defendants argue that *Grady* precludes Plaintiff's claim of damages, and therefore her breach of contract action must also fail. The gravamen of Plaintiff's breach of contract claim is that Defendants failed to perform any investigation into Plaintiff's underlying claims as required by their contractual undertaking, and their failure to act caused Plaintiff to lose her right to pursue these claims in court. However,

11

as discussed above, because Plaintiff retained the ability to pursue these claims pursuant to § 52-557n as of the time that Defendants' representation ended, which she exercised, she cannot establish that she suffered damages as a result of the alleged breach. Therefore, the Court finds that Defendants are also entitled to summary judgment on Plaintiff's breach of contract claim.

### III. Conclusion

For the reasons discussed above, Defendants' Motion for Summary Judgment [Doc. # 45] is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 15th day of January, 2013.